MICHELE POWER
SEAN BROWN
POWER AND BROWN, LLC
P.O. Box 1809
Bethel, Alaska 99559
Telephone: 907-543-4700
Facsimile: 907-543-3777

Attorneys for Leo Unin

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| LEO UNIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. A05-249 CV (RRB) |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **PLAINTIFF'S** |
| | ) | **TRIAL BRIEF** |

Plaintiff, LEO UNIN, by and through counsel, Power and Brown, LLC, and

pursuant to Local Rule 39.2, hereby submits his trial brief as set forth below.

**(1)  Summary**

  **[A] The Parties:**

This action arises under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et

seq.  Jurisdiction is based on 28 U.S.C. § 1346(a) (2) and 1346(b).  At the time of the

conduct that forms the basis for the allegations in plaintiff Leo Unin's Complaint, the

Yukon-Kuskokwim Health Corporation ("YKHC") was carrying out a compact

agreement with the Indian Health Service, and is deemed to be part of the Indian Health

Service in the Department of Health and Human Services of the United States of America

pursuant to Public Law 101-512, Title III, section 314.  YKHC employees are employees

of the United States for purposes of liability under the FTCA in this matter.

Mr. Unin brings the instant action against the United States of America for the

actions of Dr. Jennifer Lombrano, a dentist for YKHC.  At all times relevant to this case,

Leo Unin was an inmate in a State of Alaska correctional facility.

On March 31, 2004, Leo Unin presented to the Yukon-Kuskokwim Health

Corporation dental clinic with an abscessed tooth and in a great deal of discomfort.  Dr.

Jennifer Lombrano examined Mr. Unin and thereafter, extracted tooth #15.

Unfortunately, during the procedure, Dr. Lombrano perforated Mr. Unin's sinus

membrane and exposed his sinus cavity.  Although dental notes indicate that Dr.

Lombrano was aware of the sinus perforation, she did not refer Mr. Unin to a specialist

for oral surgery nor did she prescribe antibiotics for Mr. Unin.  Instead, she merely

packed the extraction site with gelfoam and sent Mr. Unin out the door.

In the days that followed the extraction, the opening into the sinus cavity allowed

an infection to develop.  Eventually, the infection was diagnosed and antibiotics were

prescribed to treat the infection.  Even so, Mr. Unin developed chronic, severe facial and

jaw pain and headaches.

In the weeks and months that followed, Mr. Unin complained to health care

providers about his pain and discomfort.  In his deposition, Mr. Unin testified that the

pain was localized in his left, back "dental" (teeth/gum line) up to his eyes.  The pain

radiated down his neck and into his chest.  It occurred three to five times a day and lasted

for four to five hours.  He stated that the pain was the same each time but the intensity

varied and at times, was extreme.  Health care providers prescribed pain medications to

lessen the pain, but he experienced only limited relief.  Mr. Unin suffered distress during

this time because health care providers thought he was malingering or that his pain

symptoms were psychosomatic.

Finally, on August 10, 2007, more than three years after the sinus perforation, Mr.

Unin underwent a procedure whereby Dr. Andrew Deeter reflected a flap in the upper left

quadrant of Mr. Unin's mouth in order to explore the maxillary sinus.  Dr.  Deeter found

a couple of mucoceles and thereafter administered a thorough lavage and debridement of

all affected areas.  A mucocele is a locally expansive cyst-like mass that is filled with

mucus and lined with epithelium.  It is often caused by trauma or injury to the sinus, i.e.,

a sinus lining tearing.  Finally, after three years of pain and suffering and after a brief

recovery period following Dr. Deeter's procedure, Mr. Unin found that his pain had

subsided.  He now no longer experiences the headaches or the  upper left quadrant pain,

left facial pain, left eye pain, left neck pain, or left chest pain.

**[B] Theories of Recovery:**

In this case, Alaska law provides the appropriate standards for medical/dental

malpractice.  Under AS 09.55.540, Mr. Unin must (1) establish a standard of care, (2)

show that Dr. Lombrano failed to exercise this standard of care, and (3) establish that the

failure was the proximate cause of his injuries. *Midgett v. Cook Inlet Pre-Trial Facility*,

53 P.3d 1105,1115 (Alaska, 2002).

Here, Dr. Harold Nemetz, Mr. Unin's expert, will testify that a dentist, performing

professional services for a patient, owes the patient the following duties of care:

1.    The duty to have that degree of learning and skill ordinarily possessed by

      reputable dentists, practicing in the same or a similar locality and under similar

      circumstances;

2.    The duty to use the care and skill ordinarily exercised in like cases by reputable

      members of the profession practicing in the same or in a similar locality under

      similar circumstances; and

3.    The duty to use reasonable diligence and her best judgment in the exercise of

      skill and the application of learning.

Dr. Nemetz will testify that a breach of any of these duties of care constitutes treatment

below the standard of care for a dentist.

Dr. Nemetz will testify that the roots of the upper back teeth are in close proximity

to the maxillary sinus and that when there is an obvious perforation of the sinus, as in this

case, there is a definite protocol that should be followed. He will testify that the tooth

socket should be packed with gelfoam and sutured so that the packing remains during the

healing/closing of the perforation; that an antibiotic should be prescribed; and a follow-up

appointment should be made to remove the sutures and to confirm that the sinus is closed.

Mr. Unin contends that Dr. Lombrano's treatment fell below the standard of care for a dentist because she lacked the skill ordinarily possessed by a reputable dentist practicing in western Alaska, failed to use proper care and techniques in the treatment of the perforated sinus in his left upper quadrant following the extraction of tooth #15; and failed to use reasonable diligence and her best judgment by failing to suture the gelfoam into the tooth socket, failing to prescribe antibiotics, and failing to schedule a follow-up examination.

Dr. Nemetz will testify that as a result of Dr. Lombrano's failures, Mr. Unin developed an infection and later, mucoceles in his maxillary sinus.  He will testify that the formation of mucoceles causes pain in the sinus area as well as the surrounding area. Medical records show that Mr. Unin complained of pain in his left upper quadrant and left facial area for over three years.   At times, the pain radiated down his left neck and into his left chest.  The pain was nearly constant and pain medications offered only occasional relief.  Record after record documents Mr. Unin's pain and suffering.  He complained so often that correctional facility health care providers eventually believed his pain to be psychosomatic and ordered a mental health evaluation.  However, Chris McMichael, the mental health evaluator, found that Mr. Unin's mental health was stable and that he exhibited "no signs of any depression or mood disturbances."  He recommended that Mr. Unin should be referred back to the medical unit for pain

management and for a follow-up with the oral surgeon for dentation issues.

Defendant and its expert, Dr. Philip Worthington, contend that Dr. Lombrano did

nothing to violate the standard of care in her management of Mr. Unin.  However, this

contention is likely based on Dr. Lombrano's "Practioner's Narrative," dated November

22, 2004,[1] drafted over eight months after treatment, wherein Dr. Lombrano stated that in

the examination of the tooth extraction site, there "was a small perforation of bone at the

base of the extraction site with grey sinus membrane still intact."  Dr. Lombrano's

narrative contradicts her own "Summary Report for Patient" which appears to be drafted

on the very day of Mr. Unin's procedure.  In the report, she noted that, indeed, there was

"evidence of sinus exposure" and that "gelfoam [was] placed in [the] socket."  In the

same record, she further noted that Mr. Unin was advised to return to the clinic "if

complications from <u>sinus exposure</u> occur."  Further, Dr. Lombrano signed off on the

Department of Corrections Prisoner Health Care Authorization form and noted a

"surgical exposure [in tooth] #15 resulting in small sinus exposure."

**(2)    Designation of appropriate pleadings and pre-trial rulings or stipulations by**

**docket number:**

- Designation of appropriate pleadings:    None

- Designation of pre-trial rulings:        None

- Stipulations:        The parties have verbally stipulated that all documents
  disclosed in the discovery process are authentic.

---

[1] The date above was taken from the facsimile heading of the document.

**(3)    Designation of which claims and which parties remain for disposition:**

- All of Plaintiff's claims against Defendant remain for disposition.

**(4)    Summary, organized by claim of:**

**[A] the anticipated evidence of liability and damages**

The following medical records show Dr. Lombrano's extraction of tooth #15 caused a perforation of his sinus cavity, that Dr. Lombrano was aware of the exposure of the sinus, that she placed gelfoam into the tooth socket, but that she failed to suture closed the gelfoam and failed to prescribe antibiotics:

- Plaintiff's Exhibit 2:  Prisoner Health Care Auth. (YKHC 000123)

- Plaintiff's Exhibit 3:  Practitioner's Narrative (CLM 000074)

- Plaintiff's Exhibit 3:  Summary Report for Patient (CLM 000075)

The following  records show that Mr. Unin suffered nearly constant pain as a result of the exposure of his sinus cavity, the sinus infection, and the formation of the mucoceles in his sinus cavity:

- Plaintiff's Exhibit 3:  Health Care Progress Notes

- Plaintiff's Exhibit 9:  Otolaryngology Consultation Note

- Plaintiff's Exhibit 10:  Request for Medical Care

- Plaintiff's Exhibit 13:  ANMC Records

- Plaintiff's Exhibit 14:  Dept. of Corrections Dental Health Records

- Plaintiff's Exhibit 15:  YKHC Records

- Plaintiff's Exhibit 16:  Oral Surgery Associates, Inc., Letter from Dr.

  Randy Deeter to Dr. Geraldine Morrow

**[B] a spreadsheet or itemized list of relief requested, including anticipated**

**dollar amounts where applicable;**

*See* spreadsheet attached as Exhibit 1.

**(5)    Citations to controlling statutes and cases**

- **AS 08.36.360. Practice of dentistry defined**

A person engages in the practice of dentistry who

(1) performs or holds out to the public as being able to perform dental operations;

(2) diagnoses, treats, operates on, corrects, attempts to correct, or prescribes for a disease, lesion, pain, injury, deficiency, deformity, or physical condition, malocclusion or malposition of the human teeth, alveolar process, gingiva, maxilla, mandible, or adjacent tissues;

(3) performs or attempts to perform an operation incident to the replacement of teeth;

(4) furnishes, supplies, constructs, reproduces, or repairs dentures, bridges, appliances or other structures to be used and worn as substitutes for natural teeth, except on prescription of a duly licensed and registered dentist and by the use of impressions or casts made by a duly licensed and registered dentist;

(5) uses the words "dentist" or "dental surgeon" or the letters "D.D.S." or "D.M.D." or other letter or title that represents the dentist as engaging in the practice of dentistry;

(6) extracts or attempts to extract human teeth;

(7) exercises control over professional dental matters or the operation of dental equipment in a facility where the acts and things described in this section are performed or done;

(8) evaluates, diagnoses, treats, or performs preventive procedures related to diseases, disorders, or conditions of the oral cavity, maxillofacial area, or adjacent and associated

structures; a dentist whose practice includes the services described in this paragraph may only perform the services if they are within the scope of the dentist's education, training, and experience and in accord with the generally recognized ethical precepts of the dental profession; nothing in this paragraph requires a person licensed under AS 08.64 to be licensed under this chapter.

- **AS 09.55.540 – Burden of Proof**

(a) In a malpractice action based on the negligence or willful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence

(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

(b) In malpractice actions there is no presumption of negligence on the part of the defendant.

- **AS 09.55.548. Awards, collateral source.**

(a) Damages shall be awarded in accordance with principles of the common law. The fact finder in a malpractice action shall render any award for damages by category of loss. The court may enter a judgment that future damages be paid in whole or in part by periodic payments rather than by a lump-sum payment; the judgment must include, if necessary, other provisions to assure that funds are available as periodic payments become due. Insurance from an authorized insurer as defined in AS 21.90.900 is sufficient assurance that funds will be available. Any part of the award that is paid on a periodic basis shall be adjusted annually according to changes in the consumer price index in the community where the claimant resides. In this subsection, "future damages" includes damages for future medical treatment, care or custody, loss of future earnings, or loss of bodily function of the claimant.

(b) Except when the collateral source is a federal program that by law must seek subrogation and except death benefits paid under life insurance, a claimant may only recover damages from the defendant that exceed amounts received by the claimant as compensation for the injuries from collateral sources, whether private, group, or governmental, and whether contributory or noncontributory. Evidence of collateral sources, other than a federal program that must by law seek subrogation and the death benefit paid under life insurance, is admissible after the fact finder has rendered an award. The court may take into account the value of claimant's rights to coverage exhausted or depleted by payment of these collateral benefits by adding back a reasonable estimate of their probable value, or by earmarking and holding for possible periodic payment under (a) of this section that amount of the award that would otherwise have been deducted, to see if the impairment of claimant's rights actually takes place in the future.

- **AS 09.55.549. Limitation on damages from health care provider's services.**

(a) Notwithstanding AS 09.17.010, noneconomic damages for personal injury or death based on the provision of services by a health care provider may only be awarded as provided in this section.

(b) In an action to recover damages for personal injury or wrongful death based on the provision of services by a health care provider, damages may include both economic and noneconomic damages.

(c) Damage claims for noneconomic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage, but may not include hedonic damages.

(d) Except as provided in (e) of this section, the damages awarded by a court or a jury under (c) of this section for all claims including a loss of consortium claim or other derivative claim arising out of a single injury may not exceed $250,000 regardless of the number of health care providers against whom the claim is asserted or the number of separate claims or causes of action brought with respect to the injury.

(e) The damages awarded by a court or jury under (c) of this section for all claims including a loss of consortium claim or other derivative claim arising out of a single injury or death may not exceed $400,000 regardless of the number of health care providers against whom the claim is asserted or the number of separate claims or causes of action brought with respect to the injury or death when damages are awarded for

wrongful death or severe permanent physical impairment that is more than 70 percent disabling.

(f) The limitation on noneconomic damages in this section does not apply if the damages resulted from an act or omission that constitutes reckless or intentional misconduct.

(g) Multiple injuries sustained by one person as a result of a single course of treatment shall be treated as a single injury for purposes of this section.

(h) In this section,

   (1) "economic damages" means objectively verifiable monetary losses incurred as a result of the provision of, use of, or payment for, or failure to provide, use, or pay for health care services or medical products, and includes past and future medical expenses, loss of past and future earnings, cost of obtaining domestic services, burial expenses, loss of use of property, cost of replacement or repair, loss of employment, and loss of business or employment opportunities;

   (2) "health care provider" has the meaning given in AS 09.55.560 and includes a state agency or municipality the health care services of which are the subject of an action that is subject to this section;

   (3) "hedonic damages" means damages that attempt to compensate for the pleasure of being alive.

**(6)    Summary of what is likely to be most at issue**

At trial, the issues in dispute will be 1) whether Dr. Lombrano exposed Mr. Unin's sinus; 2) whether she should have sutured the gelfoam into the tooth socket and prescribed antibiotics; 3) whether Mr. Unin experienced pain, suffering, inconvenience, loss of enjoyment of life, and emotional distress; and 4) whether her failures were the cause of Mr. Unin's pain and suffering.

**(7)    Summary, with references to controlling authorities, of issues likely to arise**

**regarding evidence**

      Plaintiff does not anticipate any evidentiary issues.


      DATED this 13th day of November, 2007, at Bethel, Alaska.


                            /s/ Michele L. Power
                            Power and Brown, LLC
                            P.O. Box 1809
                            Bethel, Alaska 99559
                            Phone: (909) 543-4700
                            Fax: (907) 543-3777
                            E-mail: admin@powerbrown.com
                            Alaska Bar No. 9510047


CERTIFICATE OF SERVICE

This is to certify that on the 13th day of
November, 2007, a copy of this document was
served electronically on:

Richard Pomeroy:
Richard.Pomeroy@usdoj.gov

By:    /s/ Sarah Dronenburg