IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LEO UNIN,

        Plaintiff,

vs.

UNITED STATES OF AMERICA,

Case No. 3:05-cv-249-RRB

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT**

## I.   INTRODUCTION

Before the Court is a Complaint for Damages filed by Plaintiff Leo Unin against the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Jurisdiction is based on 28 U.S.C. § 1346(a)(2) and 1346(b).

Mr. Unin alleges negligence on the part of the Public Health Service, Department of Health and Human Services, an agency of the United States of America, in that it failed to provide dental health care to Mr. Unin with the degree of knowledge and skill ordinarily possessed and exercised in the relevant field. As a result, Mr. Unin alleges that he suffered roughly 3-1/2 years of nearly persistent pain and suffering and loss of enjoyment of life.

The Government denies negligence and further contends that even if negligence was involved in the initial treatment, the Government is not responsible for Mr. Unin's subsequent damages.

## II.  TRIAL

Trial in this matter took place on April 21 and 22, 2008, at Anchorage, Alaska.  Mr. Unin testified first, by deposition, and described the dental treatment he received and his progress thereafter.  His initial dental treatment occurred March 31, 2004, while Mr. Unin was a prisoner at the Yukon Kuskokwim Correctional Center in Bethel, Alaska.  At the time, Mr. Unin's left upper molar and lower right wisdom tooth were extracted by Dr. Lombrano, an employee of the Yukon Kuskokwim Health Corporation.  It was the upper left molar extraction that became the source of Mr. Unin's subsequent problems and which is the focus of this lawsuit.

After a number of pain complaints since the initial tooth extraction and numerous visits to dentists and health care providers over the years, Mr. Unin underwent oral surgery performed by Dr. Deeter that resolved his pain.  During most of the time that Mr. Unin suffered pain as a result of his dental problems, he was in Bureau of Prison custody, although there were short periods of time that he was out.  Mr. Unin believes that the pain he suffered is worth $3 to $5 an hour and would have given all of his money over the years to have been relieved of the pain.  Mr. Unin also

had stomach discomfort because of the pain medication he was receiving.

On cross-examination, Mr. Unin testified that he has been pain free since August of 2007.  Mr. Unin also broke his foot while in custody in Bethel and also had complaints of back pain.  It took a couple months for Mr. Unin's foot to heal.  Mr. Unin sued the DOC for the broken foot.  When Mr. Unin put in a "cop out" (request for health care) at the institution, he would receive a response from the institution, although not as quickly as he would have preferred.

Bonnie Dansby, a Family Nurse Practitioner, next testified, by deposition, on behalf of Mr. Unin concerning Mr. Unin's arrival and treatment at the health care facility in March of 2004.  She authenticated relevant medical records and read portions into the record of Mr. Unin's medical chart notes. Ms. Dansby's deposition was admitted as Exhibit 26 in this matter.

Mr. Unin next called Everett Cupino, by deposition, a Department of Corrections nurse who resides in Bethel and who listed the medications Mr. Unin was prescribed during the time in question.  Mr. Cupino's deposition was admitted as Exhibit 27 in this matter.

Mr. Unin next called Dr. Geraldine Morrow, DMD, by deposition.  Dr. Morrow is currently employed by the Anchorage

FINDINGS, CONCLUSIONS, AND JUDGMENT - 3
3:05-CV-0249-RRB

Correctional Center and testified concerning Mr. Unin's dental treatment while incarcerated. Dr. Morrow did not have specific recollection regarding Mr. Unin's treatment, but referring to her records, Exhibit 14, testified that the first time she treated Mr. Unin was March 7, 2006, when Mr. Unin came in with a complaint of pain. Dr. Morrow saw Mr. Unin on April 3, 2007, and on May 22, 2007, with continued dental problems and upper left pain radiating back to the head and neck. On June 26, 2007, Dr. Morrow reviewed x-rays and referred Mr. Unin to an oral surgeon for further treatment, including the removal of an impacted lower wisdom tooth. Dr. Morrow saw Mr. Unin again on July 17, 2007, and subsequently conferred with Dr. Deeter regarding possible dental surgery. On August 10, 2007, Dr. Deeter performed surgery removing several of Mr. Unin's teeth and performed a sinus cleaning on the upper left side of the jaw, above where tooth 15 would have been (Caldwell Luc procedure), and removed two mucoceles. Dr. Morrow saw Mr. Unin several more times after this surgery but found no reason thereafter to prescribe pain medication.

Mr. Unin next called, by deposition, Chris McMichael, MSCP MHCIII, a Mental Health Clinician at the Anchorage jail. Mr. McMichael did not find Mr. Unin to be depressed or otherwise mentally unstable.

Mr. Unin next called Dr. Mark S. Hoss, telephonically, an Optometrist from the Alaska Native Medical Center in Anchorage, Alaska. Dr. Hoss performed an eye examination on Mr. Unin on January 17, 2006, regarding complaints of left dental pain and left eye pain. Dr. Hoss concluded that there was nothing specific to Mr. Unin's eyes to explain the left eye pain that Mr. Unin complained of.

Mr. Unin next called his retained expert witness, Dr. Harold Nemetz, DDS, telephonically. Dr. Nemetz's expertise in the field of dentistry, i.e. restorative dentistry, was established. Dr. Nemetz first testified concerning his general practice in examining patients before treatment begins and the importance of "cleaning up" the mouth prior to dental work. Dr. Nemetz does at least 700 tooth extractions a year. He testified concerning his practice when a sinus exposure or perforation is suspected after a tooth extraction. He routinely places gelfoam in the socket at the exposure site and sutures it in place in order to plug the hole between the mouth and sinus cavity while the healing process takes place. If the gelfoam comes out, there would likely be an opening in the sinus cavity and increased possibility of infection. Therefore, Dr. Nemetz routinely sutures the gelfoam in place. The standard of care requires suturing of

the gelfoam, administration of antibiotics, and administration of antihistamine.

Dr. Nemetz testified that Dr. Lombrano's treatment was below the standard of care in the dental community regarding tooth 15, the upper left back molar, because once she suspected a sinus cavity penetration, she failed to suture the gelfoam, failed to administer and/or prescribe antibiotics, and failed to administer and/or prescribe a decongestant. Dr. Nemetz noted that the medical records suggested that Mr. Unin's mouth was not well cared for and in poor condition when the extractions were made, which would increase the need to administer antibiotics after perforating the sinus cavity. The fact that Mr. Unin was not able to easily or readily return to the dentist increased the need to comply with the aforesaid protocol.

Dr. Nemetz testified that Mr. Unin's post-extraction pain and associated complaints suggest that the sinus cavity was perforated when the tooth was extracted and remained uncovered for a period thereafter. This then led to infection and to the pain experienced by Mr. Unin throughout the body and which Dr. Nemetz testified would explain the left-sided neck pain, headaches, and eye pain. Dr. Nemetz believes that the mucoceles removed from Mr. Unin's cavity were caused by the molar extraction and the infections that followed.

FINDINGS, CONCLUSIONS, AND JUDGMENT - 6
3:05-CV-0249-RRB

Dr. Nemetz agrees with much of Dr. Worthington's opinion, but disagrees with the conclusion that the sinus membrane was not perforated when the tooth was extracted. Furthermore, he disagrees with Dr. Worthington's conclusion that antibiotics need not have been prescribed in this case. This was a surgical extraction in a dirty mouth that required antibiotics.

Plaintiff Unin then rested.

The Government first called Dr. Jennifer Lynn Lombrano, DMS, the dentist who performed the tooth extraction which is the subject of this dispute. Dr. Lombrano testified regarding the incident in question. She testified that Mr. Unin presented initially with tooth pain. Upon examination she found Mr. Unin to have poor oral health. Mr. Unin was complaining about two teeth, 15 and 32, and requested that the teeth be extracted. After obtaining Mr. Unin's signature on the consent form, Dr. Lombrano began on tooth 15, but the tooth crumbled upon pressure. She then separated the tooth and removed the two pieces rather simply. After extracting the tooth, Dr. Lombrano had Mr. Unin close his nose and blow to see if there was a perforation of the sinus cavity. She noted that the membrane over the sinus was visible but still intact. She then placed a piece of gelfoam over the extraction site to initiate clot formation and thus healing. She didn't suture the gelfoam because it wasn't being used for closure

because there was no perforation.  She didn't prescribe antibodies because there was no remaining infection.  She gave Mr. Unin specific instructions upon his release, including post-operative care and maintenance.  She prepared the post-operative report the day of treatment.

Upon cross-examination, Dr. Lombrano didn't recall precisely the time of this surgery but believed Mr. Unin to have been the first or second patient of the day.  He arrived for emergency treatment.  He desired that his teeth be removed.  After the surgery, no decongestants were provided.  Dr. Lombrano didn't see Mr. Unin again after this event.

The Government next called William Randy Deeter, MD  DDS, by deposition, who testified regarding his treatment of Mr. Unin. Dr. Deeter testified specifically regarding the surgery performed on August 10, 2007.  At the time, Dr. Deeter removed three of Mr. Unin's teeth and performed a Caldwell-Luc sinus lavage of the left maxillary sinus to see if there was an oral antral fistula opening, a possible retained root, and to explore regarding pain complaints.  Dr. Deeter found no retained root and no opening in the area.  He found the sinus membrane to be a "little boggy," with two minor mucoceles, but found nothing too dramatic.  He scraped off the mucoceles, which he testified were typically asymptomatic.

On cross-examination, Dr. Deeter testified that if he encountered a sinus exposure or perforation, he would typically follow a sinus-precautionary regimen which would involve antibiotics, a nasal decongestant, and specific instructions as to no nose blowing to avoid back pressure into the sinus.

The Government next called Dr. Philip Worthing, DDS, an oral maxillofacial surgeon and Professor Emeritus at the University of Washington Dental School.

Dr. Worthington testified regarding the quality of care provided by Dr. Lombrano regarding the extraction of tooth 15 and concluded that there was no failure to meet the standard of care. Dr. Worthington testified that the decision not to suture over the gelfoam was discretionary and not mandatory. Further, Dr. Worthington testified that whether antibiotics should be administered is a judgment call for the clinician and would depend on the degree of infection evident around the tooth. Dr. Worthington explained a growing trend in the medical community toward frugality in the prescription of antibiotics. In reviewing the post-operative records, Exhibit B, Dr. Worthington noted no evidence of subsequent local infection, that is no evidence of localized swelling, pain, or discharge at the extraction site. The medical records noted normal healing at the extraction site.

Dr. Worthington did not see in the records any evidence of a sinus perforation, fistula, i.e. passage way from the mouth to the sinus.

Dr. Worthington testified regarding mucoceles and indicated that they are common in the population at large and are generally asymptomatic. They are sometimes the result of a sinus infection or inflammation, although their origin is frequently unknown. In May of 2007, the x-rays did not disclose mucoceles. Dr. Worthington believes, therefore, that they were recent in development. The ones found would not, on their own, have demanded surgical intervention. Dr. Worthington further testified that failure to prescribe a decongestant did not fall beyond the standard of care under the circumstances that existed in this case. In the early stages, it was not necessary. Normally, one would expect some pain after a molar is extracted for up to 10 days after extraction.

Upon cross-examination, Dr. Worthington testified that a dentist must consider a patient's oral health or hygiene in treating a patient.

The parties then presented their closing arguments and the Court took the matter under advisement with written decision to issue.

The Court has again reviewed all of the exhibits submitted by the parties including all of the medical records

### III. LAW

In a medical malpractice case under Alaska substantive law, Plaintiff has the burden of proving, by a preponderance of the evidence, the following:

1.    The degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field of specialty in which the defendant is practicing;

2.    That the health care providers lacked this degree of knowledge or skill or that the health care providers failed to exercise this degree of care; and

3.    That, as a proximate cause of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.

The relevant measure of damages in this case, according to the facts of this case and according to AS 09.17.010, are (a) compensation for pain, suffering, and loss of enjoyment of life.

### IV.  CONCLUSION

Plaintiff's counsel has done an excellent job of investigating and presenting this matter.  There is merit to her argument that an appropriate regimen to follow when encountering a sinus exposure or perforation would involve suturing the gelfoam,

administering antibiotics, and prescribing decongestants. This, however, is not required in every case and lies within the sound discretion of the dental practitioner. Moreover, deviation from this regimen would not typically lead to complications. Counsel's suggestion, though, that this is not the typical case, also has merit, for Mr. Unin had poor oral hygiene and, as a prisoner, did not have immediate access to follow-up medical care if complications occurred. This factor would justify more caution. Nevertheless, Mr. Unin has not established, by a preponderance of the evidence, a casual connection between the alleged negligent acts and his damages.

Mr. Unin presumes, for instance, that there was a sinus perforation at the time the tooth in question was extracted. There may or may not have been, although the Court views it as unlikely. Mr. Unin recalls feeling air in his mouth when breathing shortly after the surgery, but Dr. Lombrano did not see evidence of a perforation upon testing immediately after the tooth was extracted and no health care provider thereafter saw any objective signs of a perforation into the sinus cavity at the extraction site or anywhere else. Moreover, dental chart notes dated May 8, 2004, note the outward appearance of the extraction site to be good, with no swelling or odor, and that Mr. Unin could hold his nose and blow without discomfort or movement at the extraction site.

Mr. Unin presumes that he developed an infection as a result of the tooth extraction, but Dr. Lombrano saw no evidence of such after the tooth was extracted.  Health care providers in Anchorage, Alaska, saw no evidence of infection four days after the tooth extraction and, in fact, noted no fever, no redness or drainage, and normal color at the extraction site.  Moreover, in the months and years that followed the tooth extraction, no health care provider observed objective evidence of infection at the extraction site.  Furthermore, it should be noted that Mr. Unin has seen numerous health care providers, including dentists and oral surgeons, since the 2004 dental surgery and none of them were able to objectively explain or substantiate any of his complaints of pain.

Mr. Unin presumes that the administration of antibiotics would have prevented infection.  It may have or it may not have, presuming that there was an infection.  But antibiotics were administered six days after the tooth extraction, as were decongestants.  Neither appear to have addressed Mr. Unin's concerns at the time.  Further, a review of Mr. Unin's medical records indicates that he received antibiotics frequently over the years without resolution of his complaints.  To presume that antibiotics would have solved Mr. Unin's problems if administered six days earlier is highly speculative.

Mr. Unin presumes that the tooth extraction led to an infection, which in turn, led to the development of two small mucoceles in Mr. Unin's sinus cavity, which ultimately was the source of his pain.  There is no evidence, however, as to when or how these two mucoceles were formed, and no evidence that they were the source of Mr. Unin's pain.  On the contrary, Dr. Deeter, who performed the August 10, 2007, surgery, found the mucoceles to be minor, easily removed, and not the type that one would expect to cause symptoms.  Mr. Unin argues, however, that his pain resolved once the mucoceles were removed, thus establishing a connection between the pain and the mucoceles.  Possibly, but unlikely, for Dr. Deeter conducted a cleaning of the entire sinus cavity and also removed three teeth at the time.  Although there is no evidence that these or anything else might have been the source of Mr. Unin's pain, there is no evidence that it was the mucoceles.

Therefore, the Court cannot find that Mr. Unin suffered extended damages as a result of Dr. Lombrano's conduct that he would not have otherwise incurred.  Mr. Unin has failed to establish proximate cause.

There is one point, however, upon which Mr. Unin does prevail.

Both experts in this case agree that the extraction site of tooth 15 would have remained painful for between 3 to 10 days

post extraction.   It was further undisputed that, as a prisoner,
Mr. Unin had limited access to pain medication.   Therefore, it was
unreasonable not to provide and/or prescribe pain medication for at
least a short period of time.   The Court notes, however, that
Mr. Unin did receive pain medication on April 3, 2004, and a
prescription for such on April 6, 2004.   For three days, though,
Mr. Unin went without pain medication and, as would be expected,
underwent considerable pain and suffering.   For this he should be
compensated in the amount of Three Thousand dollars ($3,000).   The
remainder of his claims shall be **DISMISSED WITH PREJUDICE.**

Judgment shall enter in favor of Mr. Unin in the amount
of **Three Thousand Dollars ($3,000.00).**

ENTERED this 1st day of May, 2008.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE